THE WASHBURN & MOEN MANUFACTURING COMPANY

*v.*

THE CHICAGO GALVANIZED WIRE FENCE COMPANY.*

Mr. JUSTICE DICKEY, dissenting:

The Washburn & Moen Manufacturing Company granted a license to the Chicago Galvanized Wire Fence Company, dated January 25, 1881, to manufacture 1200 tons, annually, of barbed fence wire of a specified kind, under certain letters patent. The licensee agreed to pay three-fourths of one cent for each pound of barbed fence wire which it should make and sell, and to furnish monthly reports of the quantity made and sold, the payments to be due on the tenth day of each calendar month for the wire sold during the preceding calendar month. The licensor agreed that in case it should thereafter license any other party to manufacture and sell barbed fence wire at a less sum per pound than three-fourths of a cent, then and thereafter the royalty to be paid by the Chicago Galvanized Wire Fence Company, under the license, should be the same as such reduced royalty. On the 26th day of July, 1881, the Washburn & Moen Manufacturing Company granted a license to Jacob Haish to make and sell not more than 10,000 tons, annually, of barbed fence wire of a particular kind. This license contained precisely the same provisions as that issued to the Chicago Galvanized Wire Fence Company, except as to the style of wire and amount of tonnage, and fixed the royalty at three-fourths of one cent per pound. The main controversy is one of fact. It is contended by the appellee that the license to Haish does not express the *real contract,* and that he was allowed to make and sell barbed fence wire for less than three-fourths of one cent per pound, and that the appellee is entitled to a reduc-

---

* The principal opinion in this case will be found in this volume, *ante,* p. 71.
    43—109 ILL.

tion in royalty so as to correspond with that exacted from Haish. The appellant insists that the true agreement with Haish as to royalty is shown by the license, and that there was no reduction of the rate.

The license by the Washburn & Moen Manufacturing Company to Jacob Haish does not show the entire contract between the parties, as made on the 26th of July, 1881. Haish was the owner of letters patent for barbs and barbed fence wire, and of certain inventions and patents for machines to make barbed fence wire. Litigation was pending in the United States Circuit Court for the Northern District of Illinois, in regard to the patents owned by the respective parties. There were two suits against Haish,—one by the Washburn & Moen Manufacturing Company, and the other by that company and Ellwood,—in which the patents for barbed fence wire were in controversy. There was one suit by Stevens, and another by Haish, against the Washburn & Moen Manufacturing Company and Ellwood, in which the patent for the Stevens machine to make barbed fence wire was involved. Damages were claimed in all of these suits, for infringement. A decision had been made in the cases against Haish, sustaining the validity of a part of the patents of the complainants in these suits, and an interlocutory decree had been entered making a reference to the master to ascertain the damages, and in addition, had been required to pay into court an amount equal to three-fourths of a cent per pound for the wire made after the decision, to abide the order of the court, and under this order he had paid $25,000. If the court adhered to its decision and entered a final decree, an appeal could be taken to the Supreme Court of the United States.

Besides the license to Haish, the parties at the same time executed other papers. First, Haish assigned all of his patents for barbs, barbed fence wire, and machinery for making the same, to the Washburn & Moen Manufacturing Company and Ellwood; second, in consideration of the assignment of

these patents, that company agreed to manufacture, by itself or licensees, 8000 tons of barbed wire every year, until February 27, 1894, and to pay Haish seventy-five cents for every one hundred pounds of barbed fence wire manufactured by it or its licensees, upon a quantity not exceeding 4000 tons in any one year, and a further sum of twenty-five cents for the next 4000 tons, provided Haish should first have paid a royalty of seventy-five cents per one hundred pounds on as many pounds made by him under the license to him; third, a license to Haish, by the Washburn & Moen Manufacturing Company and Ellwood, to use exclusively the patents for barbs and barbed fence wire assigned to them by Haish, provided that suits for infringement should not be brought against the licensors or their licensees; fourth, a license to Haish by the same parties, to use the Stevens machine patents, but only to use them in operating under the license issued by them to manufacture 10,000 tons; fifth, mutual releases by the parties for all damages for infringement by the respective parties and the licensees of the Washburn & Moen Manufacturing Company and Ellwood; sixth, stipulation that a final decree should be entered in each of the suits against Haish, for one cent damages, each party to pay his own costs, and allowing Haish to withdraw the $25,105.45 deposited by him in court, and stipulations that the suits by Haish and Stevens on the patents should be dismissed.

If all of the papers executed by the parties on the 26th day of July, 1881, be treated as one contract, the question arises, did the appellant grant a license at a less royalty than to the appellee? The answer must be in the negative, unless the agreement by the appellant to pay Haish for his patents was a subterfuge and device to refund the royalty paid under the license to him to use the same patents described in the license to appellee. The evidence shows not only that the patents owned and transferred by Haish were considered by the parties themselves as valuable, but that they were in fact

of great value.   The decision of the United States court was
not final, and several of the witnesses who testified as experts
declared that the value of the Haish patents was increased
by that decision.   It was proper for the parties to decide the
value within any range which would be evidence of fraud.
It can not be said that such a limit was passed.   It is said
Haish received back an exclusive license to use his patents
for barbs and barbed wire; still, he parted with the legal
title, and thereby deprived himself of the right to license
others, and to sue for damages the licensees of the appellant.

It is also said there is evidence tending to show the Wash-
burn & Moen Manufacturing Company to be the owner of
an undivided interest in the Stevens machine patent before
the transfer by Haish.   The proof does not show, satisfac-
torily, that the appellant did acquire any interest except from
Haish.   On the 28th of January, 1881, Stevens assigned to
Haish letters patent, numbered 222,608, upon barbed fence
machines, issued December 16, 1879, and an invention for
improvements in barbed fence machines, described in an ap-
plication for letters patent filed in the patent office December
8, 1877, and also improvements on barbed fence machines,
described in an application filed in the patent office July 25,
1879.   The assignment was recorded January 31, 1881.   The
legal title was thus conveyed to and vested in Haish, who, on
July 26, 1881, conveyed the same to the Washburn & Moen
Manufacturing Company and Ellwood.   The contention of
the appellee is, that Stevens sold an undivided half of the
inventions to Dillman by contract dated February 19, 1877,
being an equitable title, which was transferred by the Lock-
stitch Fence Company, the assignee of Dillman; but there is
no evidence that the inventions covered by the contract were
the same embraced in the patents and applications mentioned
in the assignment to Haish.   Nor is there any proof that
Haish had notice of a sale to Dillman.   Besides this, there
is a conflict of evidence as to whether Dillman paid Stevens

according to the contract. Even if the appellant acquired an undivided half under Dillman, Haish had the other undivided half, and could grant licenses at his pleasure, and thus destroy a monopoly. The value secured from Haish by the assignment of the Stevens inventions was a subject for negotiation and agreement of the parties, within reasonable limits. It can not be said that the amount fixed was so large as to be evidence of fraud. It is not unusual to pay for patents an annual sum, and the parties in this case made the annual payments contingent upon Haish continuing to manufacture under the patents of appellant, and paying a royalty equal to the sum to be paid for his patents. There was nothing to prevent the appellant from fixing the amount of tonnage for each of its licensees, and there is no evidence that the 10,000 tons allowed to Haish was so large as to be fraudulent, and intended to allow him to make and sell 4000 tons free.

The appellee contends that the parol evidence proves the real contract was not expressed in the writings. The record shows various attempts by the parties and their attorneys to effect a settlement, and the witnesses testify to propositions and counter propositions; but there is no satisfactory proof that any agreement was actually made, different from that shown by the papers. If the appellant agreed with Haish to receive less royalty than had been exacted from the appellee, and these writings showing a different contract were executed for the purpose of deceiving the other licensees, it would be proper to prove the true contract by parol. The negotiations preceding the execution of the papers are not evidence to establish another contract. While some of the witnesses say there was an intention to so frame the papers as to evade the covenant with former licensees, they are contradicted by other witnesses. The evidence has not the force and weight necessary to overthrow the executed written contract.

The court below found by the decree that a license had been issued by the appellant to the appellee to manufacture and sell 1200 tons in each license year, commencing at the date of the license, January 24, 1881, by which a royalty of three-fourths of a cent per pound was to be paid monthly. The court further found that the appellant granted a license to make and sell 10,000 tons in each license year, July 26, 1881, containing the same terms as to royalty on its face, but that appellant in fact granted to Haish the right to manufacture and sell 4000 tons per annum without any royalty, 4000 tons for a royalty of one-half of a cent per pound, and the remaining 2000 tons for a royalty of three-fourths of a cent per pound. This was a finding that Haish was allowed two-fifths of his allotted tonnage free, two-fifths for a royalty of one-half of a cent per pound, and one-fifth for a royalty of three-fourths of a cent per pound. The licensor had the right to fix the tonnage for every licensee, and no licensee was required to make his entire tonnage. Assuming the finding of the decree to be correct that the appellant granted to Haish a license at a less sum per pound than three-fourths of a cent, and that the royalty to be paid by appellee should "be the same as such reduced royalty," according to the tenth paragraph of appellee's license, the decree was erroneous, because it permitted the appellee to manufacture and sell its entire annual tonnage without the payment of any royalty. The proper proportion should have been to allow the appellee to make and sell two-fifths of its 1200 tons free, two-fifths for a royalty of one-half of one cent per pound, and one-fifth for a royalty of three-fourths of one cent per pound.

I also think the decree ought to be reversed because Ellwood was not made a party.